Good morning. May it please the Court, I'm Eric Weaver on behalf of Mr. Puckett. I think in terms of evaluating this case, it's important to consider what the context of it is. And the context is that the investigation of this case went nowhere for 21 months until Mr. Sepp came forward. So Mr. Sepp is the linchpin of the whole prosecution. And the errors that are raised in this petition all focus on bolstering or attacking the credibility of Mr. Sepp. I think when the respondent in their prejudice argument summarily dismisses the notion that there's any prejudice in the errors here, they're reasoning backwards. They're assuming that Mr. Sepp is a credible witness and therefore it's a strong case. But if Mr. Sepp is not a credible witness, there's no case at all. And so I don't think you could – the Court can take the – or the Court should accept the position of the respondent that even if there were errors, it doesn't affect the outcome of the case because the case was so strong. What did trial defense counsel want to get at that the trial court wouldn't let proceed? What he wanted to get at was that not only was the – did Mr. Sepp have a grudge against Mr. Puckett, but also that the grudge was irrational because contrary to the implication that was left with the jury, that somehow Mr. Puckett was involved in the death of Mr. Sepp's friend, Mr. Puckett actually tried to rescue everybody, succeeded in rescuing everybody except for the friend. That's what trial – that's my impression of what trial counsel wanted – defense counsel wanted to get into. He wanted to establish the sort of hero facts that Puckett had gone into the fire and saved some people. What does that have to do with credibility? Well, again, the credibility has to do – Mr. Sepp says, I have a grudge against Mr. Puckett because I think he's responsible for the death of my friend. By cutting it off right there, it leaves the jury with the impression that perhaps Mr. Puckett is involved in yet another homicide. By allowing him to establish that there was this fire, even if the court had limited it to the fact that it was an accidental fire and there was no culpable responsibility on behalf of everybody, that would have corrected the impression, even if he didn't get into the hero facts. Was there a curative instruction? There was no request for a curative instruction. That's just what I was going to ask. No, there wasn't a request for a curative instruction. But the previous instructions that – I'm sorry, I didn't mean to. The trial defense counsel did not ask the trial judge to tell the jury, inform the jury, that Puckett was not responsible for the death and the fire, correct? That's true. The trial counsel became flustered, frankly, at that point. He – Well, we can't change the record. The record is the record, right? No, the record is the record. But he became flustered, asked for a timeout because he was afraid he was going to be held in contempt and then moved on. So, yes. The trial judge had told him before, you can establish that Seth has a grudge, but you can't go into the facts. In other words, you can't go in and prove that the facts unrelated to his credibility. That's why it cut him off, isn't it? Well, I think there were two steps that the trial counsel was trying to establish. The first step was that the basis of the grudge was irrational. The second, frankly, I think he was trying to get into hero facts. But the appropriate response of the court should have been to allow to establish that it was an irrational grudge and then cut off the hero facts, if that's what the court felt was proper. But, Mr. Weaver, the – at least as I read the record, the trial judge, in both instances to which you make reference, gave an admonition to the jury indicating the nature of what the lawyer said. It wasn't evidence that they were to disregard that. And with respect to the fire, he said, and you cannot speculate about whether Mr. Pika was involved in Dvorsky's murder. You are to decide this case solely based upon what you hear under oath. Under the Supreme Court's Greer case in 1987, we're supposed to presume that the jury followed the trial court's instruction. What facts do you have that would rebut this presumption? I think the – I think the problem with that admonition, the whole admonition, is that the court prefaced it by saying there will be no evidence admitted that Mr. Sepp was involved in the murder. Then you're not supposed to speculate. But it seems to me that the first sentence is a negative pregnant because it implies that there are facts, which is what the district attorney argued, we're just not going to let you hear them. And I think it's common knowledge that juries are pretty skeptical about technical reasons for excluding evidence. But that doesn't address my point about Greer. What can you give us that helps us to distinguish what the Supreme Court admonished us to do in connection with Greer? Well, I think that the – I think I can give you what I gave in the brief and what I've said here. I'm familiar with the brief. Other than the brief, do you have anything that you want us to consider? I'm sorry. I didn't mean to interrupt. I'm sorry. Right. Well, in Franklin, which we also cited in our brief, the court says that sometimes the admonitions – the court – there is some flexibility. Greer is not an ironclad rule. And I think that under Franklin it says you have to look at the context of the whole admonition. I think the context of this admonition the judge gave with one hand and took away with the other. I think that's the problem with both of the admonitions about the prosecution's argument. We would have to construe it to say there's not going to be any evidence because, in fact, that's what happened. So we'd have to have these colliding inferences from the judge's statement to get over Greer, wouldn't we? Right. But I think that that's what the admonition, especially the second admonition, does, is I think it says no evidence will be presented. He didn't say there's no evidence. And the context of that is the prosecutor arguing very aggressively that, in fact, there is evidence and it would be a lie to say that there is no evidence. So the judge communicated exactly what the prosecutor wanted him to communicate, which was we're just not going to give you any evidence of his involvement. But it didn't deny that evidence existed. And I think any reasonable person would draw that inference from that admonition. The question is can you unring the bell at that point? What would have been an acceptable curative instruction in your view? There is no evidence? I think it should ñ a curative instructive would have been this is a statement, a time for the prosecutor to set out the evidence that will develop in this case. There is no evidence that Mr. Puckett was involved in the death of Angela Dvorsky. And you should not speculate in any way on that subject. To say it directly rather than indirectly. Didn't the judge give the standard instruction that what the lawyers say in opening or closing is not evidence? Yes, but it's also established in the cases that the words of the prosecutor carry special weight because they represent the government. And I think in this ñ again, I can see that I'm running out of my time. But what I would like to emphasize is that this is the prosecutor knew that Seft was a shaky witness. And these efforts, the two statements in the opening were to bolster a shaky witness. And then the cross-examination had the same effect of bolstering a shaky witness. And given that the whole case swings on that and we're talking about a life without possibility of parole sentence, it seems to me that that unfairly took the balance in dividing Mr. Puckett of due process. Do you want to save the remaining time? I'll save my minute and 16 seconds. Thank you. Good morning. John Bachman, California Attorney General's Office. On behalf of the Respondent, on that ñ on sort of what I call the second issue, the cross-examination issue and Seft, you know, indeed, it stemmed from the defense attorney trying to backdoor that pretrial ruling and trying to get ñ you know, expand on that ruling and go around it. And so any inference that there was, you know, an improper inference left is because of the defense attorney's, you know, own ñ own cross-examination. Are you familiar, Mr. Bachman, with any cases where the factual situation here resulted in a defense reversal? By that specifically, I mean where the judge gave an admonition, Greer applies, and defense counsel says that there is a negative pregnant which results in an inference, that there is evidence, and the judge is not going to let it in. Are you familiar with any case like that that would buttress the defense argument? I am not familiar with any. And, you know, those ñ it has to also be read in conjunction. It was one of two admonitions they gave. First, the judge said there is no evidence, and then the judge said there would be no evidence of the percentage. So I think it's also part of a larger statement that there was no improper inference created. And I think the State court was correct when it said it was a clear and strong admonition, and there was instruction on it. And on the Sepp issue, there was testimony from him about the circumstances of the threats. And so that was all fleshed out at trial. So I think the State court did not unreasonably apply a Supreme Court precedent or make an unreasonable determination of facts in finding that, you know, the claim that those statements were somehow created negative inference vis-à-vis the defendant were basically hyperbole. I think they use hyperbole that grossly misstates the facts. And I think that's ñ that's accurate and true, and that if there was any negative inference, like the Court stressed, that those admonitions, those instructions, and testimony at least as to half the issue would appropriately alleviate any ñ any negative inference. And then on the second issue, that sideshow, it seems to be a perfectly reasonable trial court conduction of a trial where they don't want to do this tough sideshow. I mean, you can see what a sideshow that would become about this fire, who he saved and who he didn't save, what steps he did to do ñ you know, what caused it. So the Court cut it off, said you can go into bias and prejudice, but you can't go into a sideshow about ñ about the reasons for the fire and the like. And that ñ that ñ that was not an unreasonable, you know, determination of a Supreme Court precedent for the Court to conclude that that, you know, violated his rights. And so with that, unless there's any more questions, the Respondent will submit it. Thank you. In both of the case ñ in the case when the defense attorney asked for a mistrial, this is at the very beginning of the trial, would have been a simple matter to seat another jury and proceed. In the question of the fire, the question of the fire, even if there was five or ten minutes of evidence on that, questioning on that, it's in the context of a life without possibility of parole case, focusing on basically the only basis on which the prosecution could make a case here. Sepp was charged with this murder, and then he was given an 11-year deal to testify against Mr. Puckett. There's a ñ the whole case rested on an extremely questionable witness who originally was charged with the murder, and who was, through these artifices that we've complained about, protected and his credibility was bolstered to testify against Mr. Puckett. And it seems to me that in a case of such gravity, a few extra seconds of cross-examination or minutes of cross-examination and a new jury would not have been an undue burden, and that not doing it violated due process. If a defense counsel had said, isn't it true that Puckett was a hero and saved a life in this fire, and let's suppose Sepp said, absolutely not, that's not what happened, could the defense then bring in a witness that said Puckett was actually the hero in the fire? No, I think ñ Or the government bring in a witness to contradict that witness? No, and I've already suggested that it would have been proper to limit it to the fact that this was an accidental fire that Mr. Puckett had nothing to do with. I can see that extreme, but to cut it off where it was cut off prevented any of the rational context of being presented. Thank you very much. Thank you. Thank both counsel for your argument this morning. Puckett v. Felker is submitted.
judges: Hawkins, McKeown, Smith